IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| PATRICIA HARVEY, *Plaintiff,* v. GOBO, INC. AND GOBO2, INC., *Defendants.* | CASE NO. 6:16-CV-00076<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendants GoBo, Inc. ("GoBo1") and Gobo2, Inc.'s ("GoBo2") motion to dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 5). The Amended Complaint contains two counts. The first Count alleges employment discrimination and retaliation in violation of Title I of the Americans with Disabilities Act ("ADA") under 42 U.S.C. § 12112. (Dkt. 7-2 ¶ 1). The second Count alleges fraudulent and voluntary conveyance under Va. Code §§ 55-80, 55-81. (Dkt. 7-2 at ECF 16). The motion will be denied. A prior settlement agreement between GoBo1 and Plaintiff does not bar this action, Plaintiff has adequately pled the fraudulent and voluntary conveyance claim under Virginia state law, and, applying the equitable doctrine of laches, Plaintiff joined GoBo2 in a reasonable time frame after learning about its existence.

**I. PROCEDURAL HISTORY**

This action was filed originally in state court on December 15, 2014, naming GoBo1 as the sole defendant. (Dkt. 7-2 ¶ 9). That case was the subject of an order of nonsuit on October 13, 2015. (*Id.* ¶ 10). Plaintiff then re-filed the action on March 30, 2016. (*Id.* ¶ 11). On November 2016—eight months after Plaintiff's original complaint was filed—Plaintiff discovered GoBo2 existed. (Dkt. 7-2 ¶ 8). GoBo2 had been formed on December 23, 2013, and at some point thereafter, the assets of GoBo1 were transferred to GoBo2, effectively rendering

1

GoBo1 insolvent. (Dkt. 7-2 ¶ 47). Upon learning of the existence of GoBo2 in November of 2016, Plaintiff sought leave to file an Amended Complaint in state court in order to join GoBo2 as a defendant, (*id.* ¶ 12), and the Virginia state court granted that motion (dkt. 1-3 at ECF 1). Plaintiff then filed an Amended Complaint and Jury Demand on December 15, 2016. (Dkt. 10 at 2). On December 16, 2016, Defendants filed for removal to this Court on the grounds of federal question jurisdiction under 42 U.S.C. §§ 1981(a), 12117. (Dkt. 1 at 1).

## II. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

A court need not "accept the legal conclusions drawn from the facts." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III. FACTS AS ALLEGED

GoBo1 employed Plaintiff from May 10, 2010, until April 18, 2013, as a Biscuit Maker at a Bojangles restaurant in Lynchburg, Virginia. (Dkt. 7-2 ¶¶ 15, 21). Defendants are two Virginia corporations—GoBo1 and GoBo2. (*Id.* ¶¶ 5–6). When Plaintiff worked at Bojangles, GoBo1 controlled and operated two Bojangles restaurant locations; Plaintiff worked at one of these locations. (*Id.* ¶ 4). On February 13, 2013, Plaintiff sustained an injury to her left knee while performing her work duties. (*Id.* ¶ 17). This injury required Plaintiff to receive medical treatment, use physical aids, and take prescription medication. (*Id.* ¶ 17). Plaintiff alleges that the injury constituted a disability under the ADA. (*Id.* ¶ 18).

On April 18, 2013, Plaintiff was terminated from her employment at Bojangles. (Dkt. 7-2 ¶ 21). When Plaintiff sought an explanation for her termination, Defendants' owner, Phil Lynch, failed to provide one and said that Plaintiff's services were "no longer needed." (*Id.*). She was replaced by a person who did not suffer from a disability or need an accommodation. (*Id.* ¶ 23). Plaintiff alleges that because of the absences and accommodations needed at work as a result of her injury, GoBo1 viewed Plaintiff as a "malingerer" who tried to avoid regularly scheduled work. (Dkt. 7-2 ¶ 20). She claims that GoBo1 retaliated against her because of her disability by reducing her hours, holding her to unreasonable work expectations, singling her out for disparate discipline, using her disability as a negative factor in considering her job performance, and ultimately, terminating her based on manufactured and false grounds. (Dkt. 7-2 ¶ 20).

On December 23, 2013, GoBo2 was formed, and all of Defendant GoBo1's assets were transferred to GoBo2, rendering GoBo1 insolvent and judgment-proof. (Dkt. 7-2 ¶¶ 46–47). Plaintiff alleges that this transfer of assets was done with the knowledge of Plaintiff's claims against GoBo1 and with the intention of avoiding paying any judgment to Plaintiff. (Dkt. 7-2 ¶

3

48).

Claiming discrimination and retaliation prohibited by the ADA, Plaintiff seeks reinstatement to her former position or a position of comparable duties and responsibilities with equal pay and benefits. (Dkt. 7-2 at ECF 17). She seeks a permanent injunction enjoining Defendants from violating her rights under the ADA. (*Id.*). Additionally, Plaintiff seeks back pay, front pay, prejudgment interest, and recovery for lost employment benefits up to $75,000. (*Id.*). Furthermore, Plaintiff seeks compensatory damages under the ADA, reasonable attorney's fees and costs, damages to offset the adverse tax consequences of receiving the award in a lump sum, and interest on the pre- and post-judgment sums. (*Id.* at ECF 18). Because of the conveyance of GoBo1's assets to GoBo2, Plaintiff seeks an order setting aside the conveyance and directing GoBo2 to compensate Plaintiff from the funds derived from the conveyance. (*Id.*).

## IV. ANALYSIS OF MOTION TO DISMISS

### A. *Supplemental Jurisdiction*

Supplemental jurisdiction exists over Plaintiff's state law claims because the alleged facts bearing on Plaintiff's federal claim and the facts that could establish recovery for Plaintiff's state law claims revolve around a central fact pattern and a common nucleus of operative fact. *See* 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *United States ex rel. Bunk v. Gov't Logistics N.V.*, 842 F.3d 261, 272 (4th Cir. 2016) (exercising supplemental jurisdiction over a successor liability claim when facts establishing False Claims Act claim served as foundation for defendant's liability as a successor corporate entity).

Original jurisdiction here is supplied by Plaintiff's ADA claim. The facts used to establish a successor liability theory of recovery for violation of the ADA would be similar to those establishing Plaintiff's state law claims: The Fourth Circuit's successor liability analysis and Virginia's fraudulent and voluntary conveyance statutes have similar elements involving

4

similar badges of fraud. *Id.* at 273–74, 76; *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992); *Buchanan v. Buchanan*, 266 Va. 207, 211 (2003); *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 285 (2011); *see also infra* Section IV.C.1. Thus, if Plaintiff can establish GoBo2's liability as a successor corporate entity (in order to recover under the ADA), she could use similar evidence to establish her state law claims. *Gov't Logistics*, 842 F.3d at 272 (stating that claims "need only revolve around a central fact pattern"). Accordingly, supplemental jurisdiction exists.

### B. Settlement Agreement

Defendants argue that Count I of Plaintiff's Amended Complaint is barred by a worker's compensation settlement agreement based on the principle of accord and satisfaction. (Dkt. 5 at 1). On February 24, 2014, the Virginia Worker's Compensation Commission entered an order approving a settlement between Plaintiff and GoBo1 resolving a worker's compensation claim between them. (*Id.*). Defendants claim that the language of the settlement agreement waived Plaintiff's right to bring an ADA discrimination claim. (*Id.*). Based on the plain language of the agreement, the Court concludes that the settlement agreement does not bar the ADA claim.

When deciding a Rule 12(b)(6) motion, the court "may consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Because the settlement agreement was attached to Defendants' motion to dismiss, the court will consider the document.

Virginia law treats settlement agreements as contracts subject to the general principles of contract interpretation. *Bangor-Punta Operations, Inc. v. Atl. Leasing, Ltd.*, 215 Va. 180, 183 (1974); *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991). When the parties' intent is clear from the unambiguous terms of the contract, there is no need to examine extrinsic evidence

5

of intent. *W.D. Nelson & Co. v. Taylor Heights Development Corp.*, 207 Va. 386, 389 (1966).

Based on the plain language of the settlement agreement, Plaintiff waived only claims connected to her physical injury, *i.e.*, the subject of her worker's compensation claim. She did not waive any claims relating to discrimination—a separate and distinct injury—which was unrelated to her worker's compensation claim. The key portion of the agreement provides:

> Said settlement as set forth above shall be a complete extinguishment and complete payment of any and all claims, of any kind or nature, which the Claimant . . . might have against the Employer and Insurer . . . *as a result of the injuries sustained by the Claimant on or about February 13, 2013, which is the subject of the afore-referenced workers' compensation claim* . . . .

(Dkt. 5-1 at ECF 17) (emphasis added). Defendants point to the language at the beginning of this sentence, claiming that Plaintiff released "any and all claims . . . the Claimant . . . might have against the Employer." However, Defendants neglect to address the language at the end of the sentence—the claims waived must be "a result of the injuries" from February 13, 2013, which gave rise to the worker's compensation claim. Plaintiff is not bringing a lawsuit based on a physical workplace injury. She is bringing a lawsuit to remedy a separate harm—the subsequent discrimination that occurred after February 13, 2013, because of her disability. From the language of the release, it is clear that Plaintiff did not waive her right to bring an ADA discrimination claim because the discrimination Plaintiff suffered is a distinct harm and isolated (legal) injury from the workplace (physical) injury she suffered on February 13, 2013.

Defendants cite *Soltis v. J.C. Penney Corp., Inc.*, 635 Fed. App'x. 245 (6th Cir. 2015), arguing that the settlement agreement in *Soltis* is similar to the settlement agreement here. *Soltis*, however, is distinguishable. There, the Sixth Circuit held that an employee waived her Title VII and age discrimination claims in a workers' compensation settlement agreement. *Id.* This holding was based on language in a settlement agreement expressly waiving the plaintiff's ability to bring an age discrimination and Title VII claim. *Id.* at 247 ("Voluntarily agree . . . to forever

6

release and discharge . . . any and all claims . . . including . . . the Age Discrimination in Employment Act of 1967 . . . and Title VII of the Civil Rights Act . . . .").

In contrast, the settlement agreement between Plaintiff and GoBo1 did not waive any discrimination claims. It does mention several types of claims that the agreement extinguishes, such as disability benefits, vocational rehabilitation, and reimbursement expenses, but the agreement says nothing about discrimination. (Dkt. 5-1 at ECF 17). The claims that the agreement extinguish go hand in hand with one another because they are all claims that center around Plaintiff's physical injury which occurred at the workplace. According to the cannon of *expressio unius est exclusio alterius*, this grouping supports the inference that waiver of discrimination claims were left out of the agreement by deliberate choice. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) ("[T]he canon . . . has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence."). Furthermore, the settlement agreement specifically states that "[a] medical only award has been entered in this matter." (Dkt. 5-1 at ECF 17). In sum, the language of the settlement agreement does not bar Plaintiff's Amended Complaint. It simply settled claims related to her physical injury, not subsequent discrimination resulting from her disability.

### C. Failure to State a Claim

1. *Fraudulent Conveyance, Va. Code § 55-80*

Defendants assert that Plaintiff's Amended Complaint fails to state a claim for fraudulent conveyance under Va. Code § 55-80. (Dkt. 5 at 3). I conclude, however, that Plaintiff's complaint provides enough factual allegations to state a claim that "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Virginia's fraudulent conveyance statute reads:

7

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void.

Va. Code § 55-80. The Virginia Supreme Court has explained that § 55-80 "embodies the common law principle that transfers of real or personal property made 'with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to' are void." *Buchanan v. Buchanan*, 266 Va. 207, 211 (2003). The "essence of fraudulent conveyance . . . is the diminution of the debtor's estate to the detriment of the creditor's right of realization." *Id.* The statute requires proof of fraudulent intent to be "clear, cogent, or convincing." *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 284 (2011). Intent can be established by direct or circumstantial evidence. *Id.*

To assess a case for fraudulent conveyance, Virginia courts rely on presumptions of fraud called "badges of fraud." *Id.* The badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Id.* at 285. Plaintiff alleges that: (1) there was a conveyance of all assets from GoBo1 to GoBo2; (2) GoBo1 made this transfer with the intent to hinder, delay, or defraud; (3) Plaintiff was the intended victim of the fraudulent conveyance; and (4) the transfer was made with the knowledge that Plaintiff would be pursuing litigation against GoBo1, rendering GoBo1 insolvent. (Dkt. 7-2 ¶ 47). Plaintiff further buttresses her claim by asserting that Phil Lynch, the owner of GoBo1, was aware that Plaintiff was intending to file a lawsuit against GoBo1, and that through Phil Lynch, GoBo1's assets were transferred to GoBo2. (*Id.* ¶¶ 46–47).

These factual allegations support several badges of fraud. For example, the Amended Complaint alleges that Phil Lynch transferred "all of the assets and goodwill of GoBo" when he was "aware that Plaintiff was intending to seek monetary and judicial relief against GoBo." (*Id.*). This supports the third badge, "pursuit of the transferor or threat of litigation by his creditors at the time of the transfer." *Fox Rest Assocs.*, 282 Va. at 285. Additionally, the Amended Complaint states that GoBo1 transferred all its assets to GoBo2 "for little or no, and/or inadequate consideration." (Dkt. ¶ 47). This is proof of the fourth badge, "lack of or gross inadequacy of consideration for the conveyance." *Fox Rest Assocs.*, 282 Va. at 285. Finally, the Amended Complaint states that "GoBo2, Inc. uses the same plant, workforce members, management personnel, physical plant, and means of production as had been used by Defendant GoBo, Inc." (Dkt. ¶ 30). This undergirds the fifth badge, "retention or possession of the property by transferor." *Fox Rest Assocs.*, 282 Va. at 285.

Because Rule 12(b)(6) requires "only enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, Defendants' motion will be denied. Plaintiff's complaint provides sufficient facts to make a plausible claim of fraudulent conveyance and provides sufficient notice to Defendants as the parties proceed to discovery.

2. *Voluntary Conveyance, Va. Code § 55-81*

Defendants also assert that Plaintiff fails to state a claim for voluntary conveyance. (Dkt. 5 at 3). After examination of the Amended Complaint, I conclude that there are sufficient facts alleged to support a voluntary conveyance claim under § 55-81. Va. Code § 55-81 provides:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made.

9

To establish a voluntary conveyance under Va. Code § 55-81, a party must show that "(1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law, and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent." *In re Meyer*, 244 F.3d 352, 353 (4th Cir. 2001). Whether consideration is "deemed valuable in law" is determined by whether "*any* valuable consideration [was] received by the transferor." *Id.* at 355. Unlike §55-80, § 55-81 "does not require a finding that the transferor acted with fraudulent intent." *Fox Rest Assocs.*, 282 Va. at 287. Rather, § 55-81 "provides that if a transferor is insolvent at the time a transfer is made, without valuable consideration, then the transfer shall be voidable by prior creditors." *Id.* Plaintiff's complaint provides sufficient facts to present a plausible claim of voluntary conveyance under Va. Code § 55-81.

Plaintiff alleges that a transfer was made. According to the Amended Complaint, GoBo2 was formed on December 23, 2013, by Phil Lunch transferring "all of the assets and goodwill of GoBo1." (Dkt. ¶ 47). GoBo1 and GoBo2 "have 2500 authorized shares of stock . . . share[] the same two officers and/or directors, Phil Lynch and Ryan Lynch, as well as share[] use of the same Bojangles trade name, in the City of Lynchburg." (*Id.* ¶ 8). Additionally, Plaintiff alleges that GoBo1, through Phil Lynch, transferred the business of the two Bojangles restaurants and relinquished its assets to GoBo2 with no or inadequate consideration. (*Id.* ¶¶ 29, 47). It is reasonable to infer that GoBo1 did not receive adequate consideration because GoBo1 was insolvent after the two Bojangles franchises were transferred to GoBo2. (*Id.* ¶ 29). Plaintiff's Amended Complaint asserts that the transfer "effectively render[ed] GoBo1, Inc. insolvent," (*id.* ¶ 47), and at the time of the transfer was made, GoBo1 knew that Plaintiff "was intending to seek monetary and judicial relief against GoBo, Inc." (*Id.* ¶ 46). Because Plaintiff has sufficiently pled the elements of voluntary conveyance, the claim will not be dismissed at this stage.

## D. Statute of Limitations

*1.    Applicable Rule*

Defendants argue that that the statute of limitations bars Plaintiff's ADA claim against GoBo2. (Dkt. 5 at 4). Defendants' position is unavailing. Plaintiff's joining of GoBo2 in the Amended Complaint is governed by the doctrine of laches. If Plaintiff joined GoBo2 within a reasonable time frame after learning about its existence, the claims against GoBo2 are not time barred.

Title I of the ADA sets forth the time limits to file a proper employment discrimination cause of action. 42 U.S.C. § 12117. In this section, the ADA incorporates Title VII's time limits governing the exhaustion of administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and then the filing of a complaint in a court. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). Specifically, someone suffering discrimination must file a charge with the EEOC within 180 days of the unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). If the EEOC makes a determination that it will not bring a civil action, it must give notice to the claimant, who in turn has 90 days after receiving such notice to bring suit in court. *Id.*

Plaintiff filed a timely ADA employment discrimination complaint against GoBo1 by satisfying the statutory requirements of 42 U.S.C. §§ 12117, 2000(e)(1), (f)(1). Plaintiff filed a charge with the EEOC on September 30, 2013, within 180 days of her termination on April 18, 2013. (*Id.* ¶¶ 7, 21). The EEOC provided Plaintiff with a Notice of Right to Sue on September 16, 2014, (*id.* ¶ 19), and Plaintiff filed her complaint in Virginia state court on December 15, 2014, within the 90-day window. (*Id.* ¶ 9).

Plaintiff, however, did not join GoBo2 until the Amended Complaint, filed on December 15, 2016, (dkt. 10 at 2), which was past the 90-day time limit. 42 U.S.C. § 2000e-5(f)(1). Citing *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127 (4th Cir. 1994), Defendants claim that

11

the ADA does not contain a specific statute of limitations period, and therefore, the Court must apply the statute of limitations from an analogous state statute. *Id. McCullough*, however, is not applicable here because *McCullough* concerns the statute of limitations with respect to the Rehabilitation Act, 29 U.S.C. § 701, not the ADA.

Defendants are technically correct that the ADA does not contain a statute of limitations. Defendants, however, are mistaken that the Court must apply the statute of limitations from an analogous state statute. To determine the applicable limitations period, the Court must look to Title VII because Title I of the ADA and Title VII have the same remedial scheme. *See Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). Title I of the ADA establishes time limits for the commencement of a civil action. 42 U.S.C. §§ 12117. The ADA time limits and other enforcement provisions specifically incorporate Title VII's enforcement provisions. *See* 42 U.S.C. §§ 12117, 2000e-5(f)(1). The text of Title I of the ADA (42 U.S.C. § 12117) directs the reader to Title VII (42 U.S.C. § 2000e-5) to determine the time limits for a commencement of a civil action. Title VII's enforcement provision (detailed in 42 U.S.C § 2000e-5) does not address whether a party may be joined after the 90-day period for filing suit has expired.

According to the Supreme Court, Title VII is an exception to the general borrowing rule because adoption of state statutes of limitations is inconsistent with the congressional intent underlying Title VII. *Occidental Life Ins. Co. of California v. E.E.O.C.*, 432 U.S. 355, 369 (1977). In *Occidental*, the Supreme Court specifically held that it is inappropriate to draw on analogous state statutes when determining the statute of limitations under Title VII. *Id.* Defendants fail to address the interplay between Title I of the ADA and Title VII. Since the ADA and Title VII enforcement provisions are the same, and the Supreme Court has spoken directly on this issue in the context of Title VII, the Court will not look to analogous state statutes to determine the statute of limitations period.

12

In the Title VII context, the doctrine of laches is considered when no specified statute of limitations applies and the Court cannot borrow from an analogous state statute. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002) (allowing a laches defense in a Title VII case); *see also Brzozowski v. Correctional Physician Servs., Inc.*, 360 F.3d 173, 181 (3d Cir. 2004) (applying doctrine of laches to Title VII case where plaintiff sought to join a second defendant on the basis of successor liability after the 90-day time period).

Laches is an equitable doctrine which "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Morgan*, 536 U.S. at 103. Laches is applied in the Title VII context because Title VII "vests District Courts with broad discretion to award 'appropriate' equitable relief to remedy unlawful discrimination." Since the ADA and Title VII have the same remedial schemes, 42 U.S.C. § 12117 (2012); *see also Sydnor*, 681 F.3d at 593, the Court will apply laches to Plaintiff's claim against GoBo2.

2. *Application of Laches*

In considering equity, it is significant that Plaintiff alleges that: (1) she joined GoBo2 shortly after learning about its existence; (2) GoBo2 was created to skirt liability; and (3) the existence of GoBo2 provides the entire basis for recovery.

First, Plaintiff filed an Amended Complaint about a month after she alleges she learned of the existence of GoBo2. (Dkt. 10 at 2, 12; dkt. 7-2 ¶ 8). This is not an unreasonable delay.

Second, GoBo2 allegedly was created to hide assets and thus skirt any liability. Taking that allegation as true, refusing to allow Plaintiff to join GoBo2 would provide an improper incentive for corporate defendants to avoid liability by transferring assets to a newly created corporation without plaintiffs' knowledge. Condoning this behavior would provide an inequitable windfall. A court in equity will not allow a defendant to skirt liability through allegedly manipulative conduct.

13

Third, Plaintiff's claim against GoBo1 is dependent on establishing liability against GoBo2 under a theory of successor liability. (Dkt. 10 at 14–15). Successor liability allows an aggrieved employee to "enforce a claim or judgment against a successor that would have been valid against the predecessor," in situations "where the assets of the defendant-employer are transferred to another entity." *Brzozowski*, 360 F.3d at 177. If GoBo2 is not joined to the lawsuit, Plaintiff alleges that she would be without any ability to recover because GoBo1 transferred all of its assets to GoBo2. (Dkt. 7-2 ¶ 46–47).

Taking Plaintiff's allegations at true (which the Court must do at this stage), the Court will allow Plaintiff's claim against GoBo2 to proceed to discovery under the equitable doctrine of laches. This decision, of course, does not bar reconsideration of the laches issue after development of the factual record later in the case.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (dkt. 5) will be denied. The worker's compensation settlement between Plaintiff and GoBo1 does not bar the Amended Complaint. Additionally, Plaintiff has properly pled sufficient facts to establish a plausible claim of relief under Virginia's fraudulent and voluntary conveyance statutes. Finally, Plaintiff's claims against GoBo2 are not time barred at this time under the doctrine of laches.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to counsel of record.

Entered this __10th__ day of March, 2017.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE