CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/1/2017
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| PATRICIA HARVEY,<br><br>      *Plaintiff*,<br><br>v.<br><br>GOBO, INC. AND GOBO2, INC.,<br><br>      *Defendants.* | CASE NO. 6:16–cv–00076<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Patricia Harvey slipped, fell, and injured her knee while working as a part-time biscuit maker at a Bojangles restaurant in Lynchburg, Virginia. Her injury hampered her ability to bend or lift, as well as stand for prolonged periods. She reported these limitations and her related doctor's restrictions to her employer. Not long thereafter, Harvey says, Bojangles fired her, and the general manager refused to explain why. So she filed suit against the owners of Bojangles, GoBo, Inc. and GoBo2, Inc. ("Bojangles" or "Defendants"), alleging several violations of the Americans with Disabilities Act. She asserts Bojangles terminated her because of her disability and in retaliation for requesting accommodations. She also contends Bojangles failed to accommodate her disability and retaliated against her in other ways.

  Bojangles moved for summary judgment, arguing mainly (1) Plaintiff was not disabled under the law and (2) she wasn't fired, but voluntarily resigned to take another job. The first argument falters on legal grounds and the second founders on the facts. Read charitably to Plaintiff, there is sufficient evidence to infer that Bojangles fired her because of her disability and requests for accommodation. On the other hand, her retaliation claim cannot be based on her worker's compensation claim or tried to a jury. Accordingly, Bojangles' motion will thus be granted in part and denied in part.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

## FACTS

### Plaintiff's Employment at Bojangles

In 2010, Plaintiff began work at the Bojangles on Timberlake Road in Lynchburg, Virginia as a part-time biscuit maker. (Dkt. 29-10 at ECF 2–3). That Bojangles is operated by Defendant GoBo, Inc., while another Bojangles in town is operated by Defendant GoBo2, Inc. (Dkt. 29-4 at ECF 4–6). Phil Lynch and his son own GoBo and GoBo2, and they operate both Bojangles' locations. (*Id.*). Plaintiff worked only at the Timberlake Road location. (Dkt. 29-10 at ECF 3).

Plaintiff's usual hours were 5 a.m. to 10 a.m., two days a week. (Dkt. 29-10 at ECF 3). The morning hours allowed Plaintiff to hold other part-time jobs. (Dkt. 31-2 at 17). Specifically, she worked at McDonald's, as well as 28 to 32 hours a week as a janitor at a local mall. (Dkt. 31-2 at 17; dkt. 29-10 at ECF 2–3; dkt. 29-11 at ECF 18).

Plaintiff occasionally would be called to work additional hours for Bojangles, but this was not a regular occurrence. (Dkt. 29-10 at ECF 6). Thus, Plaintiff normally worked 10 hours a week at Bojangles, with a 15-hour workweek from time to time, and a 20-hour workweek even more rarely. (*Id*. at ECF 6; *see* dkt. 29-11 at ECF 16).

Bojangles' internal records indicate that Plaintiff received 23 citations (or "write-ups") over two and half years. Those citations document at least twelve instances of failing to bake biscuits as required, seven instances of failure to properly clean equipment or conduct preparatory work, and three instances of failing to follow proper baking procedure. (Dkt. 29-12 at ECF 7–10). Only one citation, Plaintiff's final one on February 22, 2013, occurred after her injury, and it—like several other reports—faulted her for "not following biscuit making procedures" and "not restocking her areas of" responsibility. (*Id*. at ECF 10). It stated that Plaintiff had "been coached regarding her work performance" and "needs to work independently and complete all tasks assigned, as well as keep the area neat and clean as you go." (*Id*.).

### Plaintiff's Injury

On February 13, 2013, Plaintiff fell in Bojangles' freezer and hit her left knee on the floor; she departed her shift early to go to the doctor but did not miss any other time. (Dkt. 29-10 at ECF 5, 8; dkt. 29-10 at ECF 4–6). At the doctor's office, a certified physician's assistant diagnosed her with a "left knee contusion" and permitted her to return to work with restrictions for "no climbing," "minimal walking," and wearing a knee brace. (Dkt. 29-11 at ECF 5–6). A

follow-up appointment on February 18th rendered restrictions of a "15 minute rest every 2" hours, which Plaintiff asserts she was denied during her shifts. (Dkt. 31-3 at ECF 27; dkt. 29-10 at ECF 4).

Plaintiff informed owner Phil Lynch and her managers of her restrictions, and (she says) specifically asked to rest her knee every two hours. (Dkt. 29-10 at ECF 5; dkt. 29-4 at ECF 11). Lynch responded by instructing the "kitchen people," including a man named Kenny, to help Plaintiff with any lifting. (Dkt. 29-4 at ECF 11–12). Thomas Rader, the general manager of the Timberlake Road Bojangles, observed Plaintiff limping, and he was "positive" she had some physical limitations, although he could not recall what they were. (Dkt. 31-2 at 6, 42, 44–45).

According to Plaintiff, her work performance was unaffected by her injury. (Dkt. 29-10 at ECF 4, 6, 12, 18). She admits she never informed anyone that her injury prevented her from doing any part of her job, she did not think anyone at Bojangles perceived her as being disabled, and Bojangles would "work with" her when she had doctor's appointments. (Dkt. 29-10 at ECF 5–6). Still, Plaintiff states she could not stoop or bend due to her injury, so she "would ask for help if [she] had to go and lift something." (Dkt. 29-10 at ECF 4). Although Cindy Lassiter, Plaintiff's direct supervisor, refused to give assistance, another biscuit maker—Kenny, the employee Lynch had instructed—helped her "plenty of times." (Dkt. 29-10 at ECF 4–5).

### Plaintiff's Last Day

Plaintiff's last day with Bojangles was April 18, 2013. (Dkt. 29-10 at ECF 8). There are differing accounts of what transpired. While Bojangles' employees state that Plaintiff resigned to take a job at Little Caesar's,[1] she contests that version of events. She asserts Rader fired her

---

[1] The store general manager, Rader, testified that Plaintiff quit on amenable terms. (Dkt. 31-2 at 21–22, 24–25, 35, 44, 50). Lassiter testified similarly. (Dkt. 29-9 at ECF 6, 9). Other employees provided evidence supporting this narrative. (Dkt. 29-3 ¶¶ 3–4; dkt. 29-1 at ECF 4).

and refused to provide her with a reason, other than "your services are no longer needed." (Dkt. 29-10 at ECF 20, 28, 31; dkt 31-4 at 4). She denies telling Rader about another job opportunity, and—although she concedes Rader or Lassiter may have overheard her talking about Little Caesar's on April 18th—she claims she was simply referencing her prior employment there. (Dkt. 29-10 at ECF 17, 31).

Between the date of her injury and her last day, Plaintiff's pay stubs reflect that she worked an average of nearly 15 hours per week, with a maximum workweek of 20 hours and a minimum workweek of 10 hours. (Dkt. 29-11 at ECF 26–27).[2] Plaintiff filled out a worker's compensation claim on April 29, 2013, which was stamped as received by the Virginia Workers' Compensation Commission on May 2, 2013. (Dkt. 29-11 at ECF 1–2; dkt. 29-10 at ECF 8–9).

## ANALYSIS

**I.    Plaintiff Had a Disability**

To prove a failure to accommodate or discriminatory discharge claim, a plaintiff must show, among other things, that she is disabled within the meaning of the ADA. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). The statute defines a "disability" in the disjunctive as a "physical or mental impairment that substantially limits one or more major life activities," or "a record of such impairment," or "being regarded as having such an impairment" by her employer. 42 U.S.C. § 12102(1). The ADA commands that this definition "be construed in favor of broad coverage of individuals . . . to the maximum extent permitted" by the statute's text. *Id*. §

---

[2] Rader did state—in response to plaintiff's counsel's characterization of prior testimony—that he cut Plaintiff's hours because she was unproductive. (Dkt. 31-2 at 62). Rader, however, later clarified—consistent with his testimony before counsel's characterization—that he did not recall whether he cut Plaintiff's hours and that the records could speak to the issue. (*Id*. at 69–70; *see id*. at 35–36). In light of the clarity of the pay stubs and Rader's lack of recollection, there is no genuine dispute of fact that Plaintiff's hours were not reduced after her injury.

12102(4)(A); *see* 29 C.F.R. § 1630.1(c)(4) (noting "broad scope of protection under the ADA" and that "question of whether an individual meets the definition of disability under this part should not demand extensive analysis").

Defendants argue Plaintiff does not possess an actual disability because her knee injury did not substantially limit any major life activity. They cite evidence that Plaintiff was able to continue to perform her job and never said she could not perform it, as well as the fact that she continued to work her regular hours at both Bojangles and other jobs. (Dkt. 29 at 10). But Defendants acknowledge that Plaintiff could not stoop or bend, and that she needed assistance from other coworkers to lift items. (*Id*. at 10–11). There is also evidence that Plaintiff had difficulty (and was restricted by doctors from) standing or walking for continuous periods. As Plaintiff correctly observes, these difficulties are sufficient, because the ADA defines a "major life activity" as including "walking," "standing," "lifting," and "bending." 42 U.S.C. § 12102(2)(A).[3]

## II.   Plaintiff Was Terminated

Defendants posit that Plaintiff informed Bojangles, specifically general manager Rader, that she was resigning to take a job at Little Caesar's. This matters because, if Plaintiff voluntarily resigned, she has no claim for a discriminatory or retaliatory termination. *See*

---

[3]   Defendants contend that Plaintiff was not "substantially limited" in her work, but this overlooks that what matters is whether the "life activity" (*e.g.*, walking, squatting) is so limited, which it was.
   Defendants also cite to Plaintiff's EEOC questionnaire, in which she responded that she did not have a disability. Defendants do not raise this as an exhaustion argument, but apparently as a factual basis for holding there is no disability. But Plaintiff's actual charge of discrimination included a disability claim, and the facts after discovery are enough to create an inference of disability. Moreover, this Court has previously held that an EEOC intake questionnaire is not binding upon a plaintiff. *Wright v. Parker-Hannifin Corp.*, No. 6:16-CV-00044, 2017 WL 1318576, at *3 (W.D. Va. Jan. 19, 2017) (quoting *Balas v. Huntingon Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013)).

*Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (discharge is an element of ADA wrongful discharge case); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702, 706 (4th Cir. 2001) (same; retaliatory discharge claim under ADA requires "adverse action" against plaintiff by employer). But there is a material dispute of fact on this issue. While Defendants' rely on their employees' testimony that she resigned, Plaintiff asserts that Rader fired her without elaboration. This is a quintessential credibility dispute that the Court must resolve in favor of Plaintiff at this juncture. Hence, Defendants cannot achieve dismissal of the discriminatory or retaliatory termination claims on this ground.

### III. An Inference of Causation Can Be Drawn from the Record

The ADA forbids discrimination against "any individual because such individual has opposed" action made unlawful by the ADA. 42 U.S.C. § 12203(a). A claim of retaliatory termination under this section requires that Plaintiff engaged in activity protected by the ADA and that there is a causal link between the activity and her termination. *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012).

Defendants assert "there is no evidence that [Plaintiff's] departure had anything to do with any 'protected activity.'" (Dkt. 29 at 15).[4] A reasonable juror could take the opposite view. The record supports the conclusion that Plaintiff made various requests for accommodation after her February 13th injury. Specifically, she shared with her supervisors the doctor's restrictions on walking and her need for 15-minute breaks every two hours, and owner Phil Lynch in fact instructed another employee to help Plaintiff with lifting. (Dkt. 29-4 at ECF 11; dkt. 29-10 at

---

[4] To the extent that Plaintiff complains Defendants retaliated against her for filing a workers' compensation claim, the Fourth Circuit has foreclosed that theory. *Reynolds*, 701 F.3d at 154 (holding that filing workers' compensation claim was not a protected activity under the ADA). Moreover, her worker's compensation claim was filed after her termination, so it cannot possibly be the basis of a retaliation claim.

ECF 4–5; dkt. 29-11 at ECF 5–6; dkt. 31-3 at ECF 27). Yet less than 10 weeks after making these requests, Plaintiff was fired on April 18th without explanation. The Fourth Circuit commands that "temporal proximity" between protected activity and adverse employment action is enough, by itself, to raise an inference of causation as a matter of law. *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding 10 week period sufficient to create inference of causation); *Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) (same); *see Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575, 579 (4th Cir. 2015) (holding three week gap sufficient to establish causation for both retaliatory and discriminatory firing under ADA). This temporal proximity principle also applies to the February 22nd written reprimand Plaintiff received from Lassiter, which Defendants contend cannot form the basis of a retaliation claim.[5]

## IV. Damages and Jury Trial for Retaliation Claims

Defendants identify two published decisions from the Seventh and Ninth Circuits holding that compensatory damages, punitive damages, and a jury trial are not permitted for ADA retaliation claims. *See Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1264–70 (9th Cir. 2009); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964–66 (7th Cir. 2004). Two unpublished Fourth Circuit cases hold the same. *Bowles v. Carolina Cargo, Inc.*, 100 F. App'x 889, 890 (4th Cir. 2004); *Rhoads v. F.D.I.C.*, 94 F. App'x 187, 188 (4th Cir. 2004); *see also Akbar-Hussain v. ACCA, Inc.*, No. 1:16CV1323 (JCC/IDD), 2017 WL 176596, at *5 (E.D. Va. Jan. 17, 2017). Plaintiff does not contest these authorities and admits that "there is no binding authority in the Fourth Circuit" permitting the aforementioned remedies. Thus, the Plaintiff's

---

[5] The parties did not address whether the reprimand was an adverse employment action, so the Court does not reach the issue. *See Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004); *Melendez v. Bd. of Educ. for Montgomery Cty.*, No. 17-1116, 2017 WL 4512169, at *2 (4th Cir. Oct. 10, 2017).

retaliation claim will be tried to the Court in equity.

## SUMMARY

The parties' response and reply briefs engage in additional factual skirmishes and spar over their import on various legal theories. But Defendants' opening brief fashioned legal arguments only about: whether Plaintiff was both terminated and disabled; whether her retaliation claim could survive premised on her termination, worker's compensation claim, and performance review; and the rights and remedies that exist for the retaliation claim. The Court declines to address issues beyond those. *A Helping Hand, LLC v. Baltimore Cty., Md,* 515 F.3d 356, 369 (4th Cir. 2008); *United States v. Evans*, 404 F.3d 227, 236 n.5 (4th Cir. 2005). Defendants' motion will be granted in part and denied in part. An appropriate order will issue. The Clerk is directed to send a copy of the opinion and the accompanying order to counsel.

Entered this __1st__ day of November, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE